

**NUMBER 13-07-00057-CV**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**STATE OFFICE OF RISK MANAGEMENT,**                          **Appellant,**

**v.**

**IRMA TRUJILLO,**                          **Appellee.**

---

**On appeal from the 398th District Court of Hidalgo County, Texas.**

---

# OPINION

**Before Chief Justice Valdez and Justices Garza and Benavides**
**Opinion by Justice Garza**

Appellant, the State Office of Risk Management ("SORM"), appeals from a jury verdict in favor of appellee, Irma Trujillo. The underlying lawsuit was a workers' compensation claim brought by Trujillo for injuries associated with bilateral carpal tunnel syndrome. By one issue, SORM contends that the trial court erred in excluding its expert witness from testifying at trial even though the expert witness was properly designated at

the district court level. We reverse and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

SORM is a statutory agency serving as an "insurance carrier" under the Texas Workers' Compensation Act. *See* TEX. LABOR CODE ANN. § 412.011(a)-(b)(7) (Vernon Supp. 2007). On March 17, 2004, the Texas Department of Insurance-Division of Workers' Compensation ("TDI-DWC"), formerly the Texas Workers' Compensation Commission, conducted a contested case hearing ("CCH") on Trujillo's claims for damages brought under the Texas Workers' Compensation Act. After an administrative trial, the TDI-DWC concluded that Trujillo sustained a compensable repetitive trauma injury in the nature of bilateral carpal tunnel syndrome, with the date of injury on July 17, 2003. SORM subsequently appealed the TDI-DWC's decision. The TDI-DWC appeals panel affirmed the finding of the TDI-DWC.

On July 14, 2004, SORM filed its original petition in Hidalgo County district court, challenging the TDI-DWC's decision that Trujillo sustained a compensable injury.[1] In its petition, SORM noted that Trujillo was covered by the workers' compensation insurance that it provided and that it had exhausted all of its administrative remedies under the Texas Workers' Compensation Act. *See id.* § 410.251 (Vernon 2006) (providing that "[a] party that has exhausted its administrative remedies under this subtitle and that is aggrieved by the final decision of the appeals panel may seek judicial review"). On August 17, 2004, Trujillo filed an original answer and counterclaim for attorney's fees pursuant to section 408.221 of the labor code. *See id.* § 408.221(c) (Vernon 2006). SORM did not designate

---

[1] The labor code defines a compensable injury as an "injury that arises out of and in the course and scope of employment for which compensation is payable under this subtitle." TEX. LABOR CODE ANN. § 401.011(10) (Vernon Supp. 2007).

any expert witnesses at the administrative level, but it timely designated Martin R. Steiner, M.D., among others, as an expert witness in the Hidalgo County district court on April 25, 2005.

On December 4, 2006, before voir dire was conducted, Trujillo orally moved to exclude Dr. Steiner, contending that SORM failed to show "good cause" for failing to disclose any expert witnesses at the administrative level. *See* TEX. LABOR CODE ANN. § 410.161 (Vernon 2006). The trial court concluded that SORM did not establish "good cause" for failing to disclose its expert witnesses at the administrative level and, therefore, excluded Dr. Steiner from testifying.

After a two-day trial, the jury found that Trujillo had sustained a compensable repetitive trauma injury in the form of bilateral carpal tunnel syndrome, which was reflected in the trial court's final judgment signed on December 20, 2006. In its final judgment, the trial court also ordered that SORM pay $37,760 in reasonable attorney's fees to Trujillo's trial counsel, $5,000 in reasonable attorney's fees for an appeal to this Court, and $5,000 in reasonable attorney's fee for an appeal to the Texas Supreme Court. SORM timely filed its notice of appeal on January 18, 2007. This appeal ensued.

## II. STANDARD OF REVIEW

Generally, the admission and exclusion of evidence is committed to the sound discretion of the trial court. *See Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998); *see also Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex. 1989). The trial court's decision to admit or exclude expert testimony is reviewed for abuse of discretion. *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 718 (Tex. 1998). "The test for abuse of discretion is whether the trial court acted without reference to any

3

guiding rules or principles." *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 556 (Tex. 1995).

A party complaining on appeal about the admission or exclusion of evidence must show both (1) that the trial court's ruling was erroneous and (2) that the error probably caused the rendition of an improper judgment. *Ganesan v. Vallabhaneni*, 96 S.W.3d 345, 351 (Tex. App.–Austin 2002, pet. denied); *see* TEX. R. APP. P. 44.1(a)(1). The complaining party generally must show that, when the record is reviewed as a whole, the judgment turns on the particular evidence excluded or admitted. *See City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753-54 (Tex. 1995). We determine whether the case turns on the evidence excluded by reviewing the entire record. *Id.* at 754; *see Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 617 (Tex. 2000).

### III. ANALYSIS

By its sole issue on appeal, SORM argues that the trial court improperly excluded Dr. Steiner from testifying as a expert because he was properly designated at the trial court level. SORM also contends that because the scheme at the administrative level is limited and designed to save time and expense for the employee, the employer, and the workers' compensation carrier, and because the rules of evidence do not apply, it was not required to designate Dr. Steiner at the administrative level. Finally, SORM asserts that in appealing the TDI-DWC's decision, it is entitled to de novo review and that this appeal should not be considered a continuation of the administrative hearing.

Conversely, Trujillo asserts that SORM was required to show "good cause" for its failure to designate Dr. Steiner as a testifying expert witness at the administrative level.

4

*See* TEX. LABOR CODE ANN. § 410.161 (Vernon 2006). Because SORM was unable at the December 4, 2006 hearing to articulate "good cause" for its failure to designate Dr. Steiner at the administrative level, Trujillo contends that the trial court did not abuse its discretion in excluding Dr. Steiner from testifying.

At the outset of our analysis, we must analyze the relevant section of the labor code—section 410.161—as it pertains to the trial court's exclusion of Dr. Steiner's testimony. *See* TEX. LABOR CODE ANN. § 410.161. Statutory construction is a question of law for the court to decide. *Havlen v. McDougall*, 22 S.W.3d 343, 345 (Tex. 2000). "In construing a statute, 'our primary objective is to determine and give effect to the Legislature's intent.'" *Tex. Dep't of Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex. 2002) (quoting *Nat'l Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex. 2000)); *see* TEX. GOV'T CODE ANN. § 312.005 (Vernon 1998). We start with the statute's "plain and common meaning." *State ex rel. State Dep't of Highways & Pub. Transp. v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002) (citing *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865 (Tex. 1999)); *Albertson's Inc. v. Sinclair*, 984 S.W.2d 958, 960 (Tex. 1999)).

If the statutory language is unambiguous, we will interpret the statute according to its plain meaning. *Id.* Section 410.161 provides that:

> [a] party who fails to disclose *information known*[2] *to the party or documents that are in the party's possession, custody, or control* at the time disclosure is required by Sections 410.158-410.160 may not introduce the evidence at any subsequent proceeding before the division or in court on the claim unless good cause is shown for not having disclosed the information or documents under those sections.

---

[2] Section 410.160 of the labor code provides that, with respect to workers' compensation commission hearings, the parties shall exchange, among other things: "all medical reports and reports of expert witnesses who will be called to testify at the hearing" and "the identity and location of any witness known to the parties to have knowledge of relevant facts." TEX. LABOR CODE ANN. § 410.160(1), (4) (Vernon 2006).

TEX. LABOR CODE ANN. § 410.161 (emphasis added).

The "plain and common" meaning of section 410.161 is that a party who fails to disclose information known to them, or documents in the party's possession, custody, or control at the time disclosure is required is barred from introducing such evidence at a later proceeding unless good cause is established for the prior failure to disclose. *See id*; *see also State Office of Risk Mgmt. v. Escalante*, 162 S.W.3d 619, 626 (Tex. App.–El Paso 2005, pet. dism'd) ("Section 410.161 does not provide that a party who fails to disclose information at the hearing may not introduce the evidence at a subsequent proceeding; the statute requires a party to disclose information known to the party or documents in the party's possession, custody, or control at the time the disclosure was required."). However, information or documents are admissible in a subsequent proceeding, and a party need not establish good cause, if the information is not known to the party or the documents are not in the party's "possession, custody, or control at the time disclosure is required." *See* TEX. LABOR CODE ANN. § 410.161; *see also Escalante*, 162 S.W.3d at 626-27 (holding that the trial court did not abuse its discretion in admitting reports and letters submitted by a doctor in a workers' compensation case that were neither known nor in Escalante's possession, custody, or control at the time of the administrative hearing).

At the hearing conducted on December 4, 2006, counsel for Trujillo noted, with respect to the State's failure to disclose Dr. Steiner at the administrative level, that:

> Dr. Steiner, Judge—we have other depositions of Dr. Steiner before this CCH [contested case hearing] and since. He doesn't even need to see the—the client, Judge. His opinion, well-known to them, is you cannot get carpal tunnel system [sic] from keyboarding. He's their expert. They [have] used him over and over and over, so that is information that was known to

6

them, Judge, at the CCH, and only because they lost, they want to start anew.

Counsel for SORM countered by arguing that:

> And for—for Mr. Garcia [counsel for Trujillo] to say that we've known about Dr. Steiner and his opinions is mixing apples and oranges.
>
> In this case, we did not know what Dr. Steiner was going to say about Ms. Trujillo in this particular case. He had to review the records, he had to evaluate all the medical records and then reach his opinion. That was not done until the district court level at this particular level. That was not done way back at the administrative hearing. If that would have been done, that would have been provided to Mr. Garcia though Ms. Trujillo's attorney, and that would have been exchanged at that time. It was impossible at the time, just like in Escalante[,] it was impossible to have Dr. Boone's late 2003 [sic] and 2003 letter and report provided to them because it didn't exist.
>
> In this case, it's the exact same situation. Dr. Steiner's evaluation and his report and his opinion don't [sic] exist until the trial level. That's why we can't provide it at the administrative level. That's the whole purpose of making them comply with the Rules of Civil Procedure. We've done that, he comes in and he gets to testify.

Trujillo did not introduce any evidence demonstrating that SORM knew that it was going to call Dr. Steiner as an expert witness in this case or that Dr. Steiner had been retained at the time disclosure was required at the administrative level. We are loath to accept the bald, conclusory allegations of Trujillo's counsel that SORM knew it intended to call Dr. Steiner as an expert witness in this case without any evidentiary support in the record. *See Rizkallah v. Conner*, 952 S.W.2d 580, 587 (Tex. App.–Houston [1st Dist.] 1997, no writ) ("A conclusory statement is one that does not provide the underlying facts to support the conclusion."). Moreover, there is no statutory support for Trujillo's assertion that it was incumbent upon SORM to marshal all of its evidence at the administrative hearing when such evidence was not known to it at the time of the hearing.

Further, because compensability of Trujillo's injuries was the primary issue in the

7

case, SORM was not limited to the administrative record when presenting its case to the district court. *See Tex. Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 530 (Tex. 1995) (noting that the final decision of the TDI-DWC appeals panel may be appealed to the district court level under a "modified de novo review"); *see also Tex. Mut. Ins. Co. v. Havard*, No. 01-07-00268-CV, 2008 Tex. App. LEXIS 1614, at *5 (Tex. App.–Houston [1st Dist.] Mar. 6, 2008, no pet.) (mem. op.) (stating that "[u]nder this modified de novo review, all issues regarding compensability of the injury may be tried by the jury or court" and that the trial court, although informed of the TDI-DWC's decision, is not required to accord it any particular weight, and the factfinder does not review the decision for "reasonableness," but rather independently decides the issues by a preponderance of the evidence) (citing TEX. LABOR CODE ANN. §§ 410.301, 410.304 (Vernon 2006)); *Marts v. Transp. Ins. Co.*, 111 S.W.3d 699, 704 n.2 (Tex. App.–Fort Worth 2003, pet. denied) ("Thus, this 'modified' standard of review does not exempt a party appealing an Appeals Panel decision from proving causation (or the lack of causation if the [TDI-DWC] finds a compensable injury.").

The record demonstrates that SORM timely designated Dr. Steiner as an expert witness at the district court level on April 25, 2005. Therefore, SORM's intent to call Dr. Steiner as an expert witness at the district court level can hardly be construed as unfairly prejudicing or surprising to Trujillo, considering the trial on the merits was not conducted until December 5, 2006. Based on the foregoing, we conclude that the trial court's decision to exclude Dr. Steiner's testimony is not in keeping with the "plain and common" meaning of section 410.161 of the labor code. *See* TEX. LABOR CODE ANN. § 410.161.

Next, we must determine whether the case turns on Dr. Steiner's testimony and,

8

thus, resulted in the rendition of an improper judgment. *See Ganesan*, 96 S.W.3d at 351; *see also* TEX. R. APP. P. 44.1(a)(1). An error in the exclusion of evidence requires reversal if it is both controlling on a material issue and not cumulative. *Gee*, 765 S.W.2d at 396. It is undisputed that the material issue in this case is whether Trujillo's carpal tunnel syndrome diagnosis was a compensable injury. *See* TEX. LABOR CODE ANN. § 410.301 (providing for judicial review of workers' compensation claims pertaining to, among other things, compensability).[3]

As part of SORM's bill of exception, Dr. Steiner testified outside the presence of the jury that: (1) he is board certified by the American Board of Psychiatry and Neurology and received a medical degree from the University of Florida College of Medicine in 1967; (2) part of his practice involves the treatment of carpal tunnel syndrome; (3) he believed that Trujillo did not have carpal tunnel syndrome; and (4) in deriving his opinion, he relied on Trujillo's statements and injury report, the records of four doctors, a chiropractic clinic's records, physical therapy records, records of the McAllen Wellness Center, and records from the CCH hearing conducted on March 17, 2004. *See* TEX. R. EVID. 702; *Robinson*, 923 S.W.2d at 556 (holding that an expert may testify regarding scientific, technical, or other specialized subjects if the expert is qualified and if the expert's opinion is relevant and based on a reliable foundation). Dr. Steiner further testified that the electrodiagnostic studies pertaining to Trujillo's injury were misinterpreted. Specifically, Dr. Steiner stated the following:

> A:     Well, the—the nerve conduction studies are the primary studies that are used for the diagnosis, and the sensory studies are more

---

[3] Section 401.306 of the labor code provides that in the reviewing district court, "[e]vidence shall be adduced as in other civil trials." TEX. LABOR CODE ANN. § 401.306 (Vernon 2006).

abnormal in the early stages of carpal tunnel syndrome than the motor studies. In this particular case, both the sensory and the motor distal latencies are normal. There—the sensory studies are normal by Dr. Khabbazeh's own definition. If you look under the sensory nerve study of the left hand, the palm or—mid palm is 1.3 milliseconds, and on the right it's 1.6 milliseconds. The normal latency per Dr. Khabbazeh is less than 2.3, so the studies are entirely normal. And there is no objective evidence of any pressure or dysfunction or abnormality with the median nerve, which is nerve that's compressed in carpal tunnel syndrome.

In addition, the motor studies are also normal. She does give us the normals. She does give us the normal amplitude, and those are normal, and the distal latencies are also normal at 3.6 on the left and 3.8 on the right. And what you're doing here is you are taking an electrical stimulus, you're shocking the nerve, and you're measuring the time it takes for that electrical stimulus to get from the shock point to the muscle in the case of the motor, and in the case of the sensory from the shocking point to the palm or back from the palm up through the wrist and you're measuring simply the time in milliseconds that it takes for the electrical stimulus to travel through the nerve, and if the nerve is dysfunctional, then it's going to be delayed. It's going to be slower. In this case[,] the numbers are entirely normal because the normal for motor is less than 4.5 milliseconds. She has got 3.6 on the left, 3.8 on the right, so they are completely normal. And the diagnosis of the—the findings—in fact, the doctor even hedges on it because she says it's suggestive of mild bilateral median neuropathy across the wrist, so she's not certain in herself when she gives this report—

. . . .

A:      Her numbers are normal. The numbers are normal. It cannot be—it is not indicative of carpal tunnel syndrome. There is no median nerve dysfunction.

. . . .

A:      In my opinion, they are not consistent with mild carpal tunnel syndrome or median nerve neuropathy.

Clearly, the central issue in Trujillo's case—whether she sustained a compensable injury—turned on Dr. Steiner's proposed testimony. *See Alvarado*, 897 S.W.2d at 753-54. Furthermore, the record does not contain any testimony or evidence pertaining to the

10

precise subject matter that Dr. Steiner was prepared to address. In fact, no expert testimony was presented at the jury trial by either party, and SORM did not present any expert testimony at the underlying administrative proceedings. Therefore, Dr. Steiner's testimony would not have been cumulative.

We conclude that the trial court abused its discretion in excluding Dr. Steiner's testimony pursuant to section 410.161 of the labor code. *See* TEX. LABOR CODE ANN. § 410.161. Moreover, because Dr. Steiner's proposed testimony addressed whether Trujillo sustained a compensable injury, the central issue in this case, and because his proposed testimony was not cumulative of any other evidence or testimony contained in the record, we further conclude that the trial court committed reversible error in excluding his testimony. *See* TEX. R. APP. P. 44.1(a)(1). Accordingly, we sustain SORM's sole issue.

### IV. CONCLUSION

Having concluded that the trial court abused its discretion in excluding Dr. Steiner's expert testimony, we reverse the judgment of the trial court, and we remand for proceedings consistent with this opinion.

_____
DORI CONTRERAS GARZA,
Justice

Opinion delivered and filed
this the 29th day of July, 2008.

11